**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-4111-17T3
      A-4126-17T3

SUKETU H. NANAVATI, M.D.,

 Plaintiff-Appellant,

v.

CAPE REGIONAL MEDICAL
CENTER,

 Defendant-Respondent.

_____

SUKETU H. NANAVATI, M.D.,

 Plaintiff-Appellant,

v.

CAPE REGIONAL HEALTH
SYSTEMS, d/b/a CAPE REGIONAL
MEDICAL CENTER, CAPE REGIONAL
HEALTH SYSTEM BOARD OF
TRUSTEES, JOANNE CARROCINO,
WILLIAM BRADWAY, D.O.,
MICHAEL BORISS, D.O., and
ARTHUR CHILDS, D.O.,

 Defendants-Respondents.

_____

Argued December 12, 2019 – Decided May 19, 2020

Before Judges Alvarez, Suter and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Cape May County, Docket No. C-000078-16 in A-4111-17.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Docket No. L-0125-17 in A-4126-17.

Anthony Morgano, Jr. argued the cause for appellant (Levine Staller Sklar Chan & Brown, PA, attorneys; Anthony Morgano, Jr., on the briefs).

Anthony P. Monzo argued the cause for respondents (Monzo Catanese Hillegass, PC, attorneys; Anthony P. Monzo, on the briefs).

PER CURIAM

Plaintiff Suketu H. Nanavati, M.D., a board certified cardiologist, appeals from two orders granting summary judgment dismissing his complaints in related cases. In 2016, Nanavati filed a Chancery action appealing defendant Cape Regional Medical Center's (Hospital) failure to reappoint him as a staff physician, and the termination of his clinical privileges at the facility. In 2017, Nanavati filed an action in the Law Division seeking damages, among other causes of action, pursuant to the New Jersey Law Against Discrimination

(NJLAD), N.J.S.A. 10:5-1 to -49, common-law claims of wrongful discharge under Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58 (1980), and the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, allegedly caused by the Board of Trustees of Cape Regional Health System (Board), and certain named individuals, stemming from his termination of employment by the Hospital. Nanavati and the Hospital's predecessor entity have previously engaged in litigation regarding his status as a Hospital physician. See Nanavati v. Burdette Tomlin Mem'l Hosp., 107 N.J. 240 (1987).

We now reverse both orders. As to the Chancery matter, we conclude the standards of review employed by the Fair Hearing Committee (Committee) in two proceedings substantively strayed from the standard expressed in Nanavati. Thus, we reverse the grant of summary judgment to defendants in the Chancery proceeding, as the decision assumed the standard applied by the Committee was correct.

We also reverse the grant of summary judgment dismissing Nanavati's complaint in the Law Division matter. That court, ignoring an unopposed request for adjournment made by defendants, who had filed a motion to dismiss for failure to state a claim, converted defendants' motion to an "unopposed" summary judgment motion before discovery was taken. We also reverse the

A-4111-17T3

Law Division's denial of Nanavati's request for reconsideration, in which the court, while acknowledging the request for adjournment and Nanavati's assumption it would be granted, denied reconsideration on the merits without explaining the reason the adjournment request was overlooked.

By way of abbreviated background, Nanavati has openly expressed his disapproval of Hospital policies and some staff for years; he and the Hospital have a history of being at odds. The ongoing conflict led to the Hospital's Credentials Committee's initial recommendation on March 25, 2015, to the Medical Staff Executive Committee (MSEC) that Nanavati's request for reappointment and renewal of his medical privileges be denied. This recommendation, adopted by the MSEC, led to the hearings before the Committee. The Committee recommended that Nanavati complete a behavioral program, which he did but months after the deadline.

The later June 6, 2016 Committee report stated:

> [Nanavati] has failed to prove that the recommendation was arbitrary, unreasonable or capricious because of a lack of evidence that his behavior toward others could adversely affect the ability of the hospital to deliver quality health care to patients.

> There is substantial credible evidence in the record before the [MSEC] from which it could have concluded that [Nanavati] had engaged in a course of conduct, from 2009 to 2014, that was so disruptive as to interfere

4

with the orderly operation of the hospital in a way that could affect the ability of the hospital to deliver quality health care to patients.

[(emphasis added).]

The Hospital bylaws express a different standard than the one employed by the Committee:

A basis for corrective action exists whenever a Practitioner engages in any action or behavior which is disruptive or is reasonably likely to be disruptive of Medical Center operations or to be detrimental to patient safety or delivery of good patient care, as outlined in the Medical Staff policy "Code of Conduct."

[Article IX, § 5 (Disruptive Behavior) of the Medical Staff (emphasis added).]

The MSEC adopted the Committee's June 6, 2016 report. After Nanavati completed the internal appeal process, the Board affirmed the denial of his request for reappointment and renewal of clinical privileges. Nanavati filed the Chancery complaint following this decision.

By August 10, 2017, when a telephonic case management conference was conducted in the Chancery matter, Nanavati had also initiated the Law Division action. The Chancery judge requested the parties file cross-motions for summary judgment on the legal issues. Nanavati indicated he would seek only

partial summary judgment because the Committee had applied an incorrect standard in its decision.

In the interim, an incident occurred which led to Nanavati's summary suspension. The summary suspension hearing was guided by the same hearing officer who guided the Committee through the parallel reappointment process. The Committee issued a report on September 18, 2017, stating that Nanavati had failed to carry his burden of proof of demonstrating by clear and convincing evidence that the Board acted arbitrarily and without a credible basis in summarily suspending him on June 16, 2015, and upheld the suspension.

The Law Division action, filed March 20, 2017, was assigned a 450-day discovery track, scheduled to end August 17, 2018. On May 24, 2017, defendants moved to dismiss the Law Division complaint for failure to state a claim or, in the alternative, for summary judgment, pursuant to Rule 4:6-2(e).

The parties agreed the motion would be adjourned to allow the summary suspension hearing to move forward. On June 14, 2017, Nanavati's attorney requested an adjournment until August 14, 2017, to allow sufficient time for a hearing in the companion Chancery matter to occur. That request was granted and communicated to defense counsel on June 20, 2017. On June 22, 2017,

defendants, the moving parties, requested a second postponement—which was granted—that the motion be carried until September 2017.

During an August 10, 2017 telephonic management conference in the Chancery matter, the parties again agreed to carry defendants' Law Division motion until the cross-motions for summary judgment in the Chancery matter were decided. Nanavati's attorney took no action because he assumed the request would be handled internally and conveyed to the Law Division by the Chancery court.

On August 31, 2017, defendants' counsel contacted Nanavati's attorney to confirm his consent to the adjournment. He confirmed consent because the Law Division calendar still listed the motion as returnable on September 1. Defendants' attorney, upon receiving confirmation of the consent, again requested the court adjourn the motion. He wrote:

> Please accept this letter as our request for an adjournment of the Motion for Summary Judgment pending before this Court. We are requesting that a hearing in this matter be adjourned until the first motion date in December. Adjourning the return date on this Motion will allow for a determination to be made in the Chancery Division case, Docket No. CPM-C-78-16. Cross Summary Judgment Motions are scheduled to be heard on October 3, 2017, and a resolution of the Chancery matter will likely resolve portions of the Law Division case. We have spoken to opposing counsel, and he has consented to this adjournment.

The Law Division judge, without notice to either party, decided the motion. He found there was "no general issue of material fact[,]" and that "[t]he arguments in Plaintiff's Complaint contradict themselves or the relevant statute . . . ." The judge noted in the decision that the application was "unopposed." He converted the motion to dismiss for failure to state a claim to a motion for summary judgment.

Nanavati's counsel was served with the summary judgment order September 25, 2017, and on October 11, moved for reconsideration. In their response, defendants did not object to the rescheduling of the motion to dismiss to allow Nanavati to file "a reply brief," and have the "opportunity to present oral argument to the court." Defendants reiterated that the request for adjournment stemmed from the parties' consensus that resolution of the Chancery action "would have simplified the claims for damages in the [Law Division action] . . . ." They also asserted that they were entitled to summary judgment as a matter of law.

In his decision on the motion for reconsideration, the judge did not mention his notation that the prior application was "unopposed," nor did he explain the reason he decided the initial application in the face of the movant's unopposed request for adjournment, stemming from the earlier parallel

8

proceeding in Chancery, and before discovery had begun in the matter. The court instead addressed the merits—finding that Nanavati was an independent contractor not protected under NJLAD, common law, or CEPA, and further finding that the Healthcare Quality Improvement Act of 1986 (HCQIA), 42 U.S.C. §§ 11111(a)(2) and 11151(9), immunized defendants from any action taken adverse to Nanavati.

Nanavati raises the following points on the appeal of the Chancery matter:

POINT I
The Lower Court Erred In Holding That The Hospital's Bylaws Afforded Dr. Nanavati A Fundamentally Fair Process.

A. The Lower Court Erred In Declaring That Dr. Nanavati Received A Fair Process As The Hospital's Bylaws Allow The MSEC To Reach An Ex-Parte Recommendation Before Dr. Nanavati Is Entitled To Any Due Process.

B. The Lower Court Erred In Declaring That Dr. Nanavati Received A Fair Process As Once The Ex-Parte Recommendation Is Made, The Hospital's Bylaws Impermissibly Shift The Burden Of Proof To The Physician To Prove By Clear And Convincing Evidence That Recommendation Was Arbitrary, Capricious, Or Unreasonable.

POINT II
The Lower Court Erred In Failing To Address Dr. Nanavati's Argument That The Hearing Officer Misapplied Controlling Supreme Court Precedent.

POINT III
The Lower Court Erred As A Fair Process Required Dr. Nanavati To Have Subpoena Power To Compel Recalcitrant Witnesses To Appear For A Hearing.

POINT IV
The Lower Court Erred In Failing To Address Dr. Nanavati's Argument That He Was Precluded By The Hearing Officer From Introducing Highly Relevant Evidence.

    A.    The Hearing Officer Improperly Precluded Dr. Nanavati From Introducing Evidence That He Had Attended An Approved Behavior Modification Course, And Psychiatric Evaluation.

    B.    The Hearing Officer Erred In Allowing The Hospital To Introduce Evidence Of Certain Events That Occurred Before 2010 While Simultaneously Precluding Dr. Nanavati From Testifying As To Events That Occurred During The Same Time Period.

POINT V
The Lower Court Erred In Failing To Address Dr. Nanavati's Arguments That The Hospital Violated Its Own Bylaws During The Course Of Its Investigations.

    A.    The Lower Court Erred In Failing To Address Dr. Nanavati's Argument that the MSEC failed to interview all relevant witnesses and failed to include relevant exculpatory eviden[ce].

    B.    The Lower Court Erred In Failing To Address Dr. Nanavati's Argument That The Appointment Of A Non-Physician To The

10

Investigative Committees Violated The Hospital's Bylaws.

<u>POINT VI</u>
The Lower Court Erred As A Matter Of Law In Granting Summary Judgment In Its Entirety As The Record Was Deeply Controverted And Necessitated A Plenary Hearing.

In the Law Division matter, Nanavati raises the following issues:

<u>POINT I</u>
The Lower Court's September 13, 2017 Order Erred In Granting Defendants' Motion To Dismiss As Unopposed.

A. The Lower Court Abused Its Discretion When It Decided Defendants' Motion As Unopposed In Light Of The Fact That Defendants Had Requested An Adjournment Of Its Own Motion, Plaintiff Consented Thereto, And The Court Provided No Notice Of Its Intention To Decide The Motion As Unopposed.

B. Plaintiff's Complaint, Which Must Be Read Liberally, Sufficiently Stated Causes Of Action To Withstand A Motion To Dismiss.

1. Defendants' Argument That Plaintiff Failed To Plead Sufficient Facts To Support A New Jersey Law Against Discrimination Claim.

2. Defendants' Position That Dr. Nanavati Failed To State A Claim Under CEPA was without merit.

11

3. Defendants' Immunity Argument Was Premature.

4. Plaintiff's Common Law Claims Were Not Waived By Asserting A CEPA Claim.

C. The Lower Court Improperly Converted Defendants' Motion To Dismiss Into A Motion For Summary Judgment Which Was Procedurally Premature As No Discovery Had Taken Place.

POINT II
The Lower Court's April 18, 2018 Order Erred In Denying Plaintiff's Motion For Reconsideration.

A. The Court's Decision Made No Findings With Respect To Plaintiff's Procedural Arguments That Defendants' Motion To Dismiss Should Not Have Been Granted As Unopposed In Light Of The Fact That Defendants Had Requested An Adjournment Of Their Own Motion, Plaintiff Consented Thereto, And The Court Provided No Notice Of Its Intention To Decide The Motion As Unopposed.

B. The Court Erred As A Matter Of Law In Finding That Plaintiff Was An Independent Contractor And Therefore Not Protected Under The Law Against Discrimination.

C. The Court Erred In Finding That Plaintiff Had Failed To Plead Sufficient Facts To Demonstrate A Hostile Work Environment.

D. The Court Erred As A Matter Of Law In Finding That Plaintiff Could Not Maintain A Conscientious Employee Protection Act Claim

12

Because He Was Classified As An Independent Contractor.

E.     The Court Erred As A Matter Of Law In Finding That The Hospital Was Entitled To Immunity Under The Health Care Quality Improvement Act.

F.     The Court Erred In Finding That Plaintiff Had Failed To State Causes Of Action For Breach Of Contract And Breach Of Good Faith And Fair Dealing.

We discuss each judge's analysis in greater detail in the relevant sections of this decision.

I.

In Nanavati, the Court decided the appropriate standard for termination of hospital privileges during a fair hearing requires "concrete evidence" that the "prospective disharmony" caused by a staff physician, "will probably have an adverse impact on patient care." Nanavati, 107 N.J. at 254 (emphasis added) (quoting Sussman v. Overlook Hosp. Ass'n, 92 N.J. Super. 163, 182 (Ch. Div. 1966)). The Court instructed hospitals to "follow fair procedures when considering staff privileges," prohibiting them from "arbitrarily foreclos[ing] otherwise qualified doctors from their staff." Id. at 248. It is unnecessary that the prospective disharmony actually harm patients—only that it "will probably have an adverse impact on patient care." Id. at 254.

To merit termination, "hospital authorities should present concrete evidence of specific instances of misbehavior, such as unjustified altercations with other doctors or nurses, violations of hospital practices or rules, breaches of professional standards, or the commission of some other act that will adversely affect health care delivery." Ibid. The physician's conduct must be so disruptive "as to throw the hospital into turmoil and prevent it from functioning effectively. So substantial a disruption could lead the hospital authorities to conclude that the probable outcome will be harm to the patients." Id. at 255.

In contrast with the Nanavati standard, the Committee concluded that Nanavati "failed to prove that the recommendation was arbitrary, unreasonable or capricious because of a lack of evidence that his behavior towards others could adversely affect the ability of the hospital to deliver quality health care to patients." (emphasis added).

This articulation of the standard made Nanavati's burden of proof insurmountable and predetermined the outcome—to prevail, he was required by "clear and convincing evidence" to prove the record lacked any evidence that his behavior "could" adversely affect patient care. The burden placed on him

14

was even greater than the burden of proof defined in the bylaws—which itself diverged to some extent from the language in <u>Nanavati</u>.

The Hospital bylaws state a practitioner exposes himself to "corrective action . . . whenever a Practitioner engages in any action or behavior . . . reasonably likely to be disruptive of Medical Center operations or to be detrimental to patient safety or delivery of good patient care . . . ." "[R]easonably likely" is not as exacting as "will probably have"—however, it is more demanding than the "could affect" standard applied by the Committee when reviewing Nanavati's conduct. "Could affect" encompasses an entire universe of possibilities, as opposed to probabilities. And neither phrasing mirrors the <u>Nanavati</u> language.

Nanavati argued to the Chancery judge that the Committee employed the wrong standard, thereby depriving him of a fair hearing. Although the Chancery judge repeatedly referenced <u>Nanavati</u>, and even correctly repeatedly referenced the case's articulation of the standard, nowhere in the decision did he address the Committee's failure to use the <u>Nanavati</u> standard. The court erred in granting summary judgment to defendants, and in denying partial summary judgment to Nanavati, because the Committee expanded their inquiry to include whether Nanavati's conduct "could have" an adverse impact on patient care. Application

15

of a less exacting standard for his conduct to impact patient care prejudiced his right to a fair hearing.

Separately from ignoring the Committee's actual language, the Chancery judge focused on Nanavati's real-life failures. Nanavati did not, for example, timely complete a behavior modification course as required by the Credentials Committee. He did not complete the psychiatric evaluation that might have prevented his immediate suspension. The judge said his conduct showed "a level of recalcitrance that undermines his arguments." Although those facts may be readily provable by defendants, and ultimately drive the outcome in the Chancery case—the judge did not first address the law. Had he done so, the inquiry would have stopped there.

In this case, the Committee decided Nanavati's conduct "could," as opposed to "probably would," adversely impact patient care. See Nanavati, 107 N.J. at 25. Nanavati was entitled to partial summary judgment as a matter of law.

Nanavati also contends that the judge should not have granted summary judgment in light of the highly controverted record. We need not reach the issue.

16

II.

Nanavati also contends the Law Division judge erred in granting summary judgment to defendants because the parties had agreed, with the Chancery court's reasonable endorsement, to adjourn the motion to dismiss for failure to state a claim. He argues summary judgment was procedurally improper because the judge failed to address the fact the parties believed the matter was postponed, and because no discovery had been taken. He further asserts that the complaint sufficiently stated a cause of action to withstand a motion to dismiss. We decide this appeal based upon the judge's failure to address the requested adjournment in his summary judgment and reconsideration decisions, but briefly touch upon the judge's comments on the merits.

The judge did not explain his decision to address the motion despite the request for adjournment. To reiterate, defendants—the moving party—were the ones who asked for the postponement. Although Nanavati did not join in that request, he consented to and had previously obtained postponements.

In deciding whether to grant a request for adjournment, a court assesses a number of well-established factors. See State v. Hayes, 205 N.J. 522, 538 (2011). A court is expected to engage in a "balancing process informed by intensely fact-sensitive inquiry." Ibid. Applications for continuances or

17

adjournments are reviewed for abuse of discretion. <u>State ex rel. Comm'r of Transp. v. Shalom Money St., LLC</u>, 432 N.J. Super. 1, 7 (App. Div. 2013).

That the judge here ignored the request for adjournment was in itself an erroneous exercise of discretion. He failed to even acknowledge it, much less make a fact-sensitive determination in light of the factors enumerated by defendants in their written request.

The notation on his summary judgment decision that the application was "unopposed" is also problematic. The judge was told a related Chancery action was ongoing. He had previously granted two requests for postponements made by Nanavati. This should have triggered some inquiry as to the status of opposition.

Equally problematic is that the judge converted the motion to dismiss for failure to state a claim to a summary judgment application even though they should not ordinarily be granted prior to the completion of discovery. <u>Mohamed v. Iglesia Evangelica Oasis De Salvacion</u>, 424 N.J. Super. 489, 498 (App. Div. 2012) (citing <u>Wellington v. Estate of Wellington</u>, 359 N.J. Super. 484, 496 (App. Div. 2003)). No discovery was taken here. Nanavati's discrimination and retaliation causes of action in particular required discovery.

The judge's written decision on Nanavati's motion for reconsideration did not mention in the analysis portion, or the conclusion section, the request for adjournment. This is so despite the opinion mentioning the request in the recitation of facts, and the contention that the court overlooked the request for an adjournment. The judge instead denied the motion on the merits.

Motions for reconsideration are controlled by Rule 4:49-2. "And, the magnitude of the error cited must be a game-changer for reconsideration to be appropriate." Palombi v. Palombi, 414 N.J. Super. 274, 289 (App. Div. 2010). The magnitude of the error in this case would seem to us to be a game changer. Ignoring the request for adjournment was incomprehensible. The parties reasonably assumed the matter would be adjourned. No discovery had been taken. The matter was hotly contested.

Reconsideration falls "within the sound discretion of the Court, to be exercised in the interest of justice." D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990). We review such decisions applying the same legal standard as the trial court. See Fusco v. Newark Bd. of Educ., 349 N.J. Super. 455, 461-62 (App. Div. 2002).

As a matter of fundamental justice, a reconsideration motion filed because a judge overlooks a consented-to and reasonable request for adjournment is one

that should have been granted. Furthermore, we have other concerns regarding the judge's initial decision on the motion for summary judgment.

On the motion, after setting forth the procedural history, plaintiff's arguments, and then defendants' arguments, the court said only the following:

> Viewed in favor of Plaintiff, Defendant's [sic] Motion shows that there is no genuine issue of material fact. In combination with Plaintiff's long legal history of dismissed complaints, Defendant's [sic] arguments indicate that this . . . matter is so one sided that Defendant[s] should prevail as a matter of law.
>
> The arguments in Plaintiff's Complaint contradict themselves or the relevant statutes, and have failed to establish facts in issue sufficient to warrant the matter proceeding to trial.

That abbreviated analysis does not satisfy the requirements of Rule 1:7-4, which mandate that a judge rendering a decision on a motion must make findings of fact and render conclusions of law. There is a reference to the prior history between the parties that may have factored into the judge's decision from irrelevant information. Curiously, on the motion for reconsideration, the judge addressed the merits at great length. In sum, the judge, having erred in ignoring the adjournment request, compounded the error by failing to address the request on the motion for reconsideration.

We briefly discuss some of our concerns regarding the language in the merits section of the judge's reconsideration decision. We do not suggest by this discussion that Nanavati should or should not withstand a second motion for summary judgment, or prevail at trial, should matters reach that phase.

First, in denying reconsideration, the court found Nanavati to be an independent contractor and therefore not protected under the NJLAD. The judge did so in reliance upon Pukowsky v. Caruso, 312 N.J. Super. 171, 178 (App. Div. 1998). But in Rubin v. Chilton, 359 N.J. Super. 105, 111 (App. Div. 2003), a more recent case, we rejected the argument that N.J.S.A. 10:5-12(l) never applies to independent contractors. "The conduct prescribed by [N.J.S.A. 10:5-12(l)] is exclusively related to non-employee relationships . . . . [A] Hospital [is] not required to contract for [a contractor's] service but [cannot] not refuse to do so for discriminatory reasons." Ibid. If Nanavati enjoys the protection of NJLAD despite being an independent contractor, then the judge's out-of-hand rejection of the claim was error.

Nanavati also points out that his claim was not time barred by the two-year statute of limitations for NJLAD. See Montells v. Haines, 133 N.J. 282, 290 (1993). He alleges the Hospital's improper conduct of him began in 1979 and included actions taken through and including November 1, 2016.

In D'Annuzio v. Prudential Insurance Co. of America, 192 N.J. 110, 121 (2007), the New Jersey Supreme Court in the context of a CEPA claim stated that the definition of employee "does not exclude, explicitly, persons who are designated as independent contractors," and included "more than the narrow band of traditional employees." The Court in D'Annuzio adopted the Pukowsky factors for assessing the real employer-employee status of an alleged independent contractor, which require a highly fact-sensitive inquiry. D'Annuzio, 192 N.J. at 114. In other words, even where an employee is labeled an independent contractor, he or she may enjoy the protection under CEPA after consideration of the Pukowsky factors. Id. at 120-21. The issue was highly fact-sensitive—and ordinarily should not be decided based on unopposed submissions by defendants on a motion for summary judgment.

Similarly, Nanavati's common-law claims should not have been dismissed out of hand, pursuant to Pierce. Defendants' contention that by alleging causes of action under CEPA, he waived his common-law claims is unconvincing here. Given that defendants took the position CEPA is inapplicable because Nanavati was an independent contractor and not an employee of the hospital, it then follows logically that Nanavati's common-law claims are not waived under the exclusivity provision, N.J.S.A. 34:19-8. Assuming that CEPA is applicable,

dismissal of the common-law claims under the exclusivity provision was in any event premature. Nanavati did not engage in discovery and was not in a position to make a meaningful election of whether he wished to pursue his claims under CEPA or under Pierce.

Additionally, the judge found that the named defendants had immunity pursuant to the HCQIA, 42 U.S.C. §§ 11111(a)(2) and 11151(9). Nanavati contends that dismissal under the immunity argument was premature because the judge did not determine if he was denied procedural due process, or if the peer review process defendants engaged in was undertaken in bad faith or with improper motive. On that score, obviously, precluding Nanavati from submitting a response to the original motion and scheduling oral argument prevented him from presenting any facts to challenge the immunity.

In sum, we do not understand the reason the judge initially did not address the request for postponement. Nor do we understand the absence on reconsideration of discussion about the adjournment request or why discovery had not been completed, and why the judge converted the motion for failure to state a claim to a motion for summary judgment.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23

A-4111-17T3